Good morning, Your Honors. My name is Robert Pauw, appearing here on behalf of Mr. Cardenas. I would like to reserve two minutes by way of rebuttal. There are three points that I would like to make this morning. Briefly, first, that there are – this case arises because there are two separate and independent offices that make the same determination about whether or not a person is inadmissible under Section 212a. Second, that the legalization officer, when he decided this application in August of 1989, properly and lawfully made a decision approving the application. And third, given that fact, the immigration judge in subsequent removal or deportation proceedings has to accept that decision made by the legalization office. The immigration judge does not have the authority to second-guess or go behind that decision approving the legalization application. Kennedy. What's the source of authority that if that legalization was not proper, it can't be undone? Well, there is a procedure. There is a separate mechanism for undoing that legalization application. That was not used in this case. Basically, in any decision that's made by an immigration office outside of the immigration judge, the case can be reopened. The case would have to be reopened and, in that decision, undone. Where that's not done, the immigration judge does not have any authority to undo the legalization application. The statute is very clear that the immigration judge can't do that. Do you have any case law to support that? Well, the statute itself is very clear. First of all, the statute says that there shall be no administrative review, administrative or judicial review, of a determination respecting a legalization application. That's also in the Board of Immigration Appeals has itself recognized that in a case called the matter of Mossery. Now, when it says there's no review of an application, that would sound like the application was denied, you can't review it. It doesn't say that there's no review of a determination to grant permanent status. Well, again, our position is that the Immigration Service can review and undo a decision granting legalization, but it's got to do that in accordance with the regulations. That is to say, it's got to go back and reopen that case in front of the legalization office or the Administrative Appeals. What regulation says that? It's the general regulation that applies to all applications pending before the Immigration Service, 8 CFR Section 103, I believe it's 103.5. Yes, 103.5 allows the Immigration Service to go back and reopen a case in which a decision has been made. Again, that's the rule that applies with respect to cases pending before the Immigration Office, including the Legalization Office and the Administrative Appeals Unit. In any event, we submit that the legalization officer in August of 1989, when he made that decision, was acting properly and lawfully. We don't know, and of course, it's the Immigration Service that has the burden of proving that the decision was made improperly. The Immigration Service has the burden of establishing that the legal status should be taken away. We don't know what the legalization record contains because that was not submitted into the removal proceedings. But again, we have to presuppose or assume that the agency acted in accordance with its regulations. In August of 1989, the legalization officer certainly could have properly determined that a conviction for drug paraphernalia is not a conviction relating to a controlled substance offense. In fact, there's support for that conclusion that the legalization officer could have come to in prior Board precedent decision, the matter of Paulus, which was cited in our supplemental briefing, which would seem to indicate that where there's no evidence in the record of what particular controlled substance or drug may have been involved, then the conviction is not a conviction relating to a drug or relating to a controlled substance. With respect to... Hello, this is a call from Graytop in Yellow Cab. Your cab has arrived. If you are satisfied with your message, please continue recording. At the end of your message, press 1. Your cab has arrived. So, again, it's our position that the immigration judge, when he gets this case in removal proceedings, has to accept the fact that the person in front of him is, in fact, a permanent resident. He can't go back and undo the decision approving the legalization application. Now, we submit also that the immigration judge in this context does not have authority to decide whether or not the person is deportable under 237a1a, the provision that says a person is deportable if he or she was inadmissible at the time of adjustment of status, where the allegation is the time of adjustment of status is the approval of the legalization application. The immigration judge does not have the authority or the jurisdiction to make that determination. But even if the immigration judge does have authority to make that determination, all that says is that the person is deportable. That does not take away his or her legalization status. That's a separate decision made exclusively by the legalization office. In conclusion, we would submit that the Board's decision has to be reversed, and the decision made by the immigration judge approving the 212c application, approving the waiver for a long-term permanent residence, should be affirmed. Thank you, Your Honors. Thank you, counsel. May it please the Court. My name is Dimitri Rocha, and I represent the Respondent. In this case, Petitioner conceded at the hearing that he was inadmissible, and that is the dispositive factor in this case. He was inadmissible due to his 1988 conviction, and that made him ineligible for 212c waiver. The 1989 conviction was which one again? The 1988 conviction and Washington State conviction. Drug paraphernalia. Correct. Correct. The drug paraphernalia conviction. Could you keep your voice up a little bit, please? Sure. Petitioner's contention that the immigration judge did not have jurisdiction to deport him is unfounded. First of all, the regulation that was cited, 8 CFR 103.85 in Petitioner's brief, actually specifically states this dealing with motions to reopen. Motions to reopen are considered in other than special agricultural worker and legalization cases. So that actual section of the regulation does not apply to legalization cases. Secondly, with regard to whether the immigration judge was required to rescind his lawful permanent residence status, that is not required under the regulations and under the law. Under 8 CFR 245a.3, the regulation states that any sort of rescission procedure should apply – should follow the procedure set forth in 8 U.S.C. 1256a. And in those procedures, it specifically states that the immigration judge is not required – there is no rescission required. In fact, 8 U.S.C. 1256a states that nothing in the subsection shall require the Attorney General to rescind the alien status prior to commencement of procedures to remove the alien in order removal issued by an immigration judge shall be sufficient to rescind the alien status. This is exactly what the Fourth Circuit looked at in the matter of – excuse me – the Yacica case. Basically, essentially the same – some of the very same arguments that are brought by Petitioner right now, and the Fourth Circuit rejected those arguments. There's another case, although didn't exactly raise the same arguments, but it was the same – basically the same procedure. It was a Second Circuit case, Dela Rosa 489 F. 3rd 551. It was a very recent case. And there was another Immigration Reform Control Act case where the immigration judge had ordered the alien deported after he had erroneously received lawful permanent resident status. Now, does it say rescind post facto or retroactively? Does rescission take place at the time the act of rescission occurs, or is it effective from the date of the – that the permanent resident status was granted? Well, our position is that the lawful permanent resident status was never actually granted. It was never lawful. That's under the Ninth Circuit's Monet decision, and also the Board's matter of a Kaluantagi decision. And, in fact, that's in 8 U.S.C. 1256a, that little blurb that I quoted states that rescission isn't even necessary. You could – the immigration judge can just simply find the alien deportable. And that means that it was never granted proper – Correct. Correct. It was an erroneous – admittedly, it was erroneous. And, in fact, the petitioner did admit in his brief to the Board that – the record 12 and 13 that he failed to disclose his drug paraphernalia conviction. But when you talk about rescinding status, which is what the regulation, you say, refers to, it doesn't necessarily mean that there never was a status granted. If rescinding could either be effective as of the date you rescind or ab initio. Correct. Or you say that there's a case that says it's effective so that the status has never been granted. Right. Right. The Mone case. There was no – Which case do you say that is? The – it's a Ninth Circuit, the Mone case. It's in our brief. Okay. But basically, our position is not that – the immigration judge did not have to actually rescind it. The immigration judge under 81256a could simply just find the alien deportable. He was not required to rescind the lawful permanent resident status under the Immigration Reform Control Act that was granted to him. Well, doesn't that all depend on the retroactivity of this determination about the – whether the criminal conviction was a bar? Okay. As an issue of matter, I don't know if I misunderstood Petitioner when he was up here, but I think he stated that there was a supplemental memorandum that he may have filed, and I have not seen that because I know he stated something about matter of policy. But, no, as – You never received the supplemental memorandum? No. If there's one that was filed recently, no. Well, there is one, yes. And the government filed one, too. Right. We did file one dealing with the Petty Exception, Petty Offensive Exception, not any other issue. But dealing with the Lulee argument, based on his retroactive argument that it's not applicable, and the Ninth Circuit's case law, City of Tacoma, deals specifically with this issue dealing with judicial interpretation of a statute. And basically, his arguments were dealing with a new statute being applied retroactively, not a judicial decision. As this Court has stated, a judicial interpretation of a statute gives meaning from the inception of the statute, not the date of the decision. And that's exactly what happened in this case. Although Petitioner claimed that this was a law – excuse me – that the decision was a matter of, quote-unquote, first suppression, which is what this Court has stated, the Court further stated that it was just a natural – natural application of the 15 law, quote-unquote. There can be no other conclusion than the conclusion that this Court came to. So it was a natural conclusion of what the interpretation of that statute was. So the retroactivity is not an issue in this case. Many of the – The effectiveness of the subsequent judicial decision is certainly a factor in this case. I don't follow your argument. Well, it's – it was not – there is not an impermissible retroactive application of – of the Lulee decision, because, in fact, the Court stated that this is basically what the case law was all the time. And, in fact, Lulee builds on an existing case law in the Ninth Circuit about how broad a conviction-related control substance is, dating back to the 1970s. And it's basically reinforced that, so there can be no other conclusion than the conclusion that the Court made in that case. So there was not an impermissible retroactive application of the law there. Counsel, this is a case in which the immigration judge said if he were free to, that he would grant discretionary relief. It's also a case in which the person being deported has a wife, three children, who are all American citizens. He's been here since he was 14, 25 years. He has no record in the last 10 years. There are some legal questions in the case. Would the government be opposed to mediation in this case? We – we do not think that there could be any different decision, basically, under law under mediation. If the Court orders us to go to mediation, we will go to mediation. But I think the statute and case law are clear on these facts. Well, even if they are, there's no obligation on the part of the government to seek deportation or not to, you know, resolve to – this would be a case where, with the pending lawsuit, where it couldn't be resolved if the government desired to, given all the equitable circumstances. I don't think the government is prevented. Whatever its view of the law is, it's not prevented from resolving a case when it's disputed. So, you know, if the government says, well, if we go to mediation, we're not going to agree to anything, there's no point sending it to mediation. But if the government would be willing to go and consider the various possible solutions, it doesn't mean you have to accept any. But if you're willing to consider them, I think the Court thinks this would be a good case to try. Our services are available, and they've proven successful in a fair number of cases. Okay. I mean, it will not be my decision whether we will or will not mediate, so that I'm not saying that we will not mediate in this case. All right. Thank you. Well, you know, the Court's pretty selective when the panel decides to send a case to mediation. They look at the circumstances and look for fairly strong equitable considerations, which Judge Reinhart just said seem to exist in this case. Right. I mean, I can see this is a sympathetic case. I'm not saying that. Go ahead. Well, that's what the immigration judge said, yes. Correct. So it's nothing new for that being the government's position in this case. Thank you. In sum, knowing all the discussion about mediation, the Court should deny the petition for review. Thank you. Thank you, counsel. Of course, on our side, we would certainly not be opposed to mediation. This is perhaps the most important event in Mr. Cardenas's life, and whatever can be done, he'll explore any avenue. Let me just make a couple points, first of all, about the reopening process in legalization applications. There is a provision in 8 CFR section 103B, and I think it's the next subsection, subsection B, that actually deals with reopening legalization cases. So I just want to reaffirm that there is, in fact, a reopening process in the context of legalization applications. There's also a rescission process. The regulations relating to the legalization program do allow for the rescission of a grant of permanent resident status under the legalization program. That's in 8 CFR section 245A and section 245A.30. That allows for rescission. Those rescission proceedings, if the government decides that it wants to rescind permanent resident status under the legalization program, then it does that under the statute, section 246. And those rescission proceedings have to be brought within five years. So with respect to the rescission process, there is some repose there. That is to say, if those rescission proceedings are not brought within five years, then there's no further chance for the rescission proceedings. The case law that allows for an immigration judge to, after the five-year period, after the five-year rescission period, to deport somebody on the basis of 237A1A, though that case law all comes out of the general adjustment of status provision under section 245, not under the special legalization program. So, again, it's a – I just want to reiterate that it's our position that in the legalization context that the proper way is not for the immigration judge to make the determination that legalization was improper. But that has to be done under the special legalization rules. Thank you, counsel. I have no further comments. Thank you. Thank you. The case just argued will be submitted subject to the Court's issuance of an order regarding mediation. The next case on the calendar is Javelina v. Gonzalez. It's submitted on the briefs. The next case for oral argument is United States v. Fisher. Thank you. Thank you.
judges: Cudahy , Reinhardt, Paez